ORIGINAL



15 MAG    1233

Approved: _____
          HAGAN SCOTTEN
          Assistant United States Attorney

Before:   HONORABLE SARAH NETBURN
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x
                                  :   **COMPLAINT**
UNITED STATES OF AMERICA          :
                                  :   Violations of
          - v. -                  :   18 U.S.C. §§ 371, 554, and
                                  :   2; and 22 U.S.C. § 2778(c)
ALEX BRYUKHOV and                 :
EDWIN ACETY,                      :   COUNTY OF OFFENSE:
                                  :   NEW YORK
          Defendants.             :
                                  :
- - - - - - - - - - - - - - - - - x

DOC # ___1___

SOUTHERN DISTRICT OF NEW YORK, ss.:

     Ryan Beck, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

### COUNT ONE

     1.   From at least in or about 2011, up to and including at least in or about February 16, 2015, in the Southern District of New York and elsewhere, ALEX BRYUKHOV and EDWIN ACETY, the defendants, and others known and unknown, willfully combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, to violate Title 22, United States Code, Sections 2778(b)(2) and (c).

     2.   It was a part and an object of the conspiracy that ALEX BRYUKHOV and EDWIN ACETY, the defendants, and others known and unknown, willfully did export and attempted to export from the United States to Russia defense articles designated by the President under Title 22, United States Code, Section 2778(a)(1), and listed on the United States Munitions List, without a license for such export issued in accordance with the Arms Export Control Act and the International Traffic in Arms Regulations.

1

OVERT ACTS

3.      In furtherance of said conspiracy and to effect its illegal object, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

        a.      In or about 2011, ALEX BRYUKHOV and EDWIN ACETY, the defendants, attempted to purchase a FLIR T-60 Thermal Camera from a store located in the vicinity of 34th Street and 8th Avenue in New York, New York.

        b.      On or about July 16, 2014, BRYUKHOV traveled to the vicinity of Brighton Beach, New York and shipped gun parts to Russia using ACETY's name, then returned to his home by traveling through New York, New York.

        c.      In or about 2015, ACETY purchased an OASYS Night Vision Sight at the direction of BRYUKHOV, and BRYUKHOV subsequently transferred the OASYS Night Vision Sight to another person for shipment to Russia.

        (Title 18, United States Code, Section 371.)

## COUNT TWO

4.      From at least in or about 2011 up to and including at least in or about February 16, 2015, in the Southern District of New York and elsewhere, ALEX BRYUKHOV and EDWIN ACETY, the defendants, fraudulently and knowingly exported and sent from the United States merchandise, articles, and objects contrary to laws and regulations of the United States, and concealed, bought, sold, and facilitated the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same were intended for exportation contrary to law and regulations of the United States, to wit, BRYUKHOV and ACETY attempted to export firearms components and other controlled defense articles to Russia.

        (Title 18, United States Code, Sections 554 and 2.)

## COUNT THREE

5.      From at least in or about 2011 up to and including at least on or about February 16, 2015, in the Southern District of New York and elsewhere, ALEX BRYUKHOV and EDWIN ACETY, the defendants, knowingly and willfully exported and attempted to

2

export from the United States to Russia defense articles designated by the President under Title 22, United States Code, Section 2778(a)(1), and listed on the United States Munitions List, without a license for such export issued in accordance with the Arms Export Control Act and the International Traffic in Arms Regulations, to wit, BRYUKHOV and ACETY attempted to export firearms components and other controlled defense articles without a license to Russia.

(Title 22, United States Code, Section 2778(b)(2), and Title 22, Code of Federal Regulations, 123.1 and 127.1.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6. I am a Special Agent with the FBI, and have been employed with the FBI since 2010. I have been personally involved in the investigation of the above-described offenses. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents, and from my conversations with fellow law enforcement officers. I am familiar with the federal laws relating to the unlawful export of arms from the United States as specified and regulated by the Department of State, Directorate of Defense Trade Control. I am also familiar with related laws, the interpretation and application of federal laws and federal court procedures. Because this complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## BACKGROUND

7. The Arms Export Control Act ("AECA"), codified at Title 22, United States Code, Sections 2751 et seq., empowers the President, among other things, to regulate the export from, and import into, the United States, of "defense articles" and "defense services."

8. "Defense articles" are items that are specifically designed, developed, configured, adapted, or modified for a military application. Title 22, Code of Federal Regulations, Part 120, known as the International Traffic in Arms Regulations (the "ITAR") authorizes the United States Department of State,

with the concurrence of the Department of Defense, to designate the articles and services deemed to be defense articles and services. These defense articles and services are specified on the United States Munitions List (the "USML").

9. If an item falls on the USML, it may not be exported from, or imported into, the United States without a valid license issued by the U.S. Department of State, see 22 U.S.C. § 2778(b)(2), unless certain limited regulatory exceptions apply.

10. In addition, if an individual or entity is "in the business of" manufacturing, exporting, or importing any defense articles or defense services on the USML, it must register with the State Department. See 22 U.S.C. § 2778(b)(1)(A)(i).

11. A willful violation of any of the statutory provisions listed above in paragraphs 9 and 10, or any regulations promulgated under those statutory provisions, is a felony. See 22 U.S.C. § 2278(c).

12. I have reviewed written reports and certifications concerning the items described as "Controlled Items" in paragraphs 15 to 23 of this Complaint, specifically: the collapsible rifle stocks and magazine shells intercepted on July 10, 2014 (paragraph 15); the firearms components intercepted on July 17, 2014 (paragraph 16); the firearms components intercepted on October 6, 2014 (paragraph 19); the firearms springs intercepted on February 16, 2015 (paragraph 20); the "Raptor" rifle scope purchased in 2011 (paragraph 21a); and the OASYS night vision sight purchased in February, 2014 (paragraph 21b). According to the U.S. Department of State, Directorate of Defense Trade Controls ("DDTC"), each of the Controlled Items is a defense article, as specified in the USML.

13. I have spoken with a special agent with the Department of Homeland Security ("Special Agent-1"), who has informed me that he has reviewed information obtained from the United States Department of State, and that ALEX BRYUKHOV and EDWIN ACETY, the defendants, are not licensed, registered or otherwise authorized to export any of the Controlled Items described in this Complaint.

INTERCEPTION OF CONTROLLED ITEMS

14. On or about July 9, 2014, FBI Special Agents conducted visual surveillance of ALEX BRYUKHOV, the defendant. I have

4

spoken with the team leader of the FBI Special Agents who conducted the surveillance on July 9, 2014, and have learned the following: The Special Agents confirmed BRYUKHOV's identity by comparing a driver's license photograph of BRYUKHOV to the individual under surveillance. Additionally, BRYUKHOV drove a vehicle registered in his name to and from the residence listed on his driver's license. While under surveillance, BRYUKHOV drove to three different post offices in or around Princeton, New Jersey (the "Princeton Post Offices"). BRYUKHOV shipped one package at each of the Princeton Post Offices, for a total of three packages (the "July 9 Packages"). While preparing two of the three July 9 Packages for shipment outside the Princeton Post Offices, BRYUKHOV donned what appeared to be latex gloves. Immediately after BRYUKHOV left each of the three Princeton Post Offices, FBI agents entered each post office and obtained copies of the shipping labels for each of the July 9 Packages. Each shipping label listed a different name, address, and telephone number for the sender, none listed BRYUKHOV's true name as the sender, and each listed an address in Russia.

15. On or about July 10, 2014, Customs and Border Patrol ("CBP") officers intercepted and opened the July 9 Packages. From my conversations with Special Agent-1 and review of photographs of the July 9 Packages' contents, I know that the July 9 Packages contained Controlled Items. In particular each of the July 9 Packages contained at least one collapsible rifle stock, and in total the July 9 Packages also contained sixty magazine shells (that is, components of ammunition magazines used in firearms).

16. On or about July 16, 2014, a Postal Inspector ("Postal Inspector-1") informed me that postal records indicated that ALEX BRYUHKOV, the defendant, had mailed a package from a particular post office in the vicinity Brighton Beach, New York (the "Brighton Beach Post Office") at or about 1:00 pm on July 16, 2014. I have reviewed a surveillance photograph from the New York City Police Department showing a car registered to BRYUKHOV leaving the Holland Tunnel at approximately 9:21 p.m. on July 16, 2014. I know from experience that the entrance to the Holland Tunnel is located in Manhattan, New York.

17. On or about July 17, 2014, CBP officers searched a package sent from the Brighton Beach Post Office at approximately 1:00 pm on or about July 16, 2014 (the "July 16 Package"). CBP determined that the July 16 Package contained various gun parts, each of which is a Controlled Item. The shipping label on the July 16 Package showed a destination

address in Russia, showed "Edwin Acety" as the sender, and listed the sending address as that of EDWIN ACETY, the defendant. In accordance with its policy, the CBP sent a letter to ACETY (the "CBP Letter") informing ACETY that CBP had intercepted these items and that ACETY could claim them.

18. On or about October 3, 2014, GPS information obtained from a warrant for location data from a cellphone used by ALEX BRYUKHOV, the defendant, indicated that BRYUKHOV was in the vicinity of a particular post office in or around Philadelphia, Pennsylvania (the "Philadelphia Post Office") at or about 4:20 p.m.[1] Postal Inspector-1 informed me that a single package was mailed from the Philadelphia Post Office to a destination in Russia on or about October 3, 2014 (the "October Package"). The October Package's shipping label shows that the October Package was relayed to the Philadelphia Post Office at approximately 4:20 p.m. From my conversations with Postal Inspector-1, I know that the sender of the October Package paid cash for the October Package's shipment and listed a fictitious sender's address (that is, a street address that does not, in fact, exist).

19. On or about October 6, 2015, CBP opened the October Package and found that it contained four firearms components, each of which is a Controlled Item. The Controlled Items were concealed inside a screwdriver set.

20. On February 16, 2015, agents with the Department of Homeland Security (the "HSI Agents") searched ALEX BRYUKHOV, the defendant, in John F. Kennedy International Airport as he was boarding a plane to Russia. The HSI Agents found and seized four firearms springs, which are Controlled Items, concealed in BRYUKHOV's carry-on luggage.

### EDWIN ACETY'S STATEMENTS

21. On or about February 25, 2015, Special Agent-1 and I spoke with EDWIN ACETY, the defendant, in Brooklyn, New York. ACETY stated, in substance and in part:

    a. In or about October 2011, ACETY purchased a "Raptor" rifle scope, which is a Controlled Item, for ALEX BRYUKHOV, the defendant.

---

[1] On September 24, 2014, this Court issued a warrant authorizing the prospective collection of location data from BRYUKHOV's cellphone.

b.  In or about February 2014, ACETY had purchased an OASYS night vision sight (the "OASYS"), which is a Controlled Item, from a member of the United States Army.  ACETY stated that when Army investigatory personnel had initially questioned ACETY about this purchase, ACETY had falsely stated that he had given the OASYS to someone named "Vlad."  ACETY now acknowledged that he had in fact given the OASYS to BRYUKHOV, and that BRYUKHOV had confirmed that the OASYS was destined for Russia.

c.  ACETY stated that he played no role in sending the July 16 Package.  According to ACETY, after receiving the CBP Letter in or around July 2014, ACETY assumed that BRYUKHOV had sent the package using ACETY's name.

d.  On other occasions, ACETY had purchased night vision devices for BRYUKHOV.[2]  BRYUKHOV told ACETY that he wanted ACETY's assistance because ACETY is the better negotiator.  ACETY knew that the items he acquired for BRYUKHOV would be sent outside the United States.  BRYUKHOV paid ACETY approximately $200 to make these purchases.

22.  On or about March 4, 2015, Special Agent-1 and I spoke with EDWIN ACETY, the defendant, in Brooklyn, New York.  ACETY stated, in substance and in part:

a.  ACETY bought the OASYS at the direction of ALEX BRYUKHOV, the defendant.  ACETY received $10,000 in his bank account from an account in Russia, part of which was used to purchase the OASYS and part of which was kept by ACETY as compensation.  Subsequent to the purchase, ACETY and BRYUKHOV had a significant argument when ACETY's bank closed ACETY's account due to the large transfer of foreign funds.

b.  In or about 2011, ACETY and BRYUKHOV attempted to purchase a FLIR T-60 Camera,[3] from a store located in the vicinity of 34th Street and 8th Avenue in New York, New York.

---

[2]  I have reviewed invoices from ACETY's purchases of night vision devices. I have spoken with the manufacturer of the night vision devices on the invoices, and the manufacturer has informed me that the night vision devices on the invoices are defense articles found on the USML.

[3]  Special Agent-1 has informed me that FLIR T-60 Cameras are defense articles found on the USML.

23.  On or about March 7, 2015, EDWIN ACETY, the defendant, called me.  ACETY stated, in substance and in part, that after receiving the CPB Letter he had called ALEX BRYUKHOV, the defendant.  According to ACETY, BRYUKHOV had initially denied sending the July 16 Package, but later admitted that he had done so.

WHEREFORE, deponent respectfully requests that warrants be issued for the arrest ALEX BRYUKHOV and EDWIN ACETY, the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

_____
RYAN BECK
Special Agent
FBI

Sworn to before me this
14th day of April, 2015

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK